UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SHELL TRADING (US) COMPANY,           §
                                      §
    Movant,                           §
                                      §
v.                                    §           Misc. Action No.
                                      §
VEGA CAPITAL LONDON LIMITED and       §
ADRIAN SPIRES,                        §
                                      §
    Respondents.                      §

### NON-PARTY SHELL TRADING (US) COMPANY'S MOTION TO QUASH DEFENDANTS VEGA CAPITAL LONDON LIMITED AND ADRIAN SPIRES'S SUBPOENA TO TESTIFY AT A DEPOSITION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

    I.        STUSCO Is Not a Party and STUSCO's Conduct Is Not at Issue in the Underlying Litigation ................................................................................................................. 3

    II.       STUSCO's Trading Information Is Highly Confidential and Closely Guarded From STUSCO's Competitors, Like Vega ...................................................................... 4

    III.     The Deposition Subpoena Seeks Information About STUSCO's Confidential Information and Trade Secrets ............................................................................. 6

    IV.    STUSCO and Other Non-parties Have Repeatedly Objected to Vega and Spire's Subpoenas Because the Information Sought Is Highly Confidential................................. 8

ARGUMENT AND AUTHORITIES........................................................................................ 10

    I.        Information About STUSCO's Business Operations and Trading Strategy is Entitled to Confidential Treatment and Is Not Relevant or Necessary............................ 12

        A. Vega and Spires Cannot Meet Their Burden of Showing That the Information They Seek From STUSCO Is Relevant ............................................................... 16

        B. Vega and Spires Cannot Meet Their Burden of Showing That the Information They Seek From STUSCO Is Necessary............................................................ 18

        C. The Protective Order Is Not Enough to Protect Against Disclosure ................... 20

    II.       Information About the Nature, Source, Chain of Custody, and Authenticity of STUSCO's Documents Can Be Obtained Through Less Burdensome Means................. 22

    III.     The Deposition Subpoena Must Be Quashed Because It Imposes Burdens On STUSCO Beyond Those Set Forth in the Federal Rules of Civil Procedure.................... 23

CONCLUSION..................................................................................................................... 24

**Page(s)**

**Cases**

*Adtrader, Inc. v. Google LLC*,
No. 17-CV-07082-BLF, 2020 WL 6391210 (N.D. Cal. Mar. 24, 2020) ................................15

*Algarin v. Maybelline, LLC*,
No. 12CV3000 AJB DHB, 2014 WL 690410 (S.D. Cal. Feb. 21, 2014) .............................15

*Am. Soc. of Media Photographers, Inc. v. Google, Inc.*,
No. 13 C 408, 2013 WL 1883204 (N.D. Ill. May 6, 2013) .................................................12

*America's Health & Resources, Ctr., Ltd. v. Alcon Laboratories, Inc.*,
No. 16 CV 4539, 2018 WL 11189390 (N.D. Ill. Mar. 12, 2018) ..........................................22

*Aspen Mktg. Servs., Inc. v. Russell*,
No. 09 C 2864, 2009 WL 4674061 (N.D. Ill. Dec. 3, 2009) ..................................................13

*Blaise v. Transworld Sys. Inc.*,
No. 21 CV 5791, 2022 WL 3026946 (N.D. Ill. Aug. 1, 2022) ..............................................16

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
755 F.3d 55 (1st Cir. 2014) ...................................................................................................11

*Colo. Bankers Life Ins. Co. v. Acad. Fin. Assets, LLC*,
No. 5:20-CV-00185-D, 2021 WL 1997006 (E.D.N.C. Mar. 9, 2021) ...................................23

*Concord Boat Corp.*,
No. 96 C 602, 1996 WL 705260 (N.D. Ill. Dec, 4, 1996) ................................................19, 20

*Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elecs., Inc.*,
No. 14 C 3731, 2014 WL 2808984 (N.D. Ill. Jun. 20, 2014) ................................................21

*Craigville Tel. Co. v. T-Mobile USA, Inc.*,
No. 19 CV 7190, 2022 WL 17740419 (N.D. Ill. Dec. 16, 2022) ..............................11, 12, 19

*DeGeer v. Gillis*,
755 F. Supp. 2d 909 (N.D. Ill. Dec. 8, 2010) .......................................................................23

*Elder v. Bimbo Bakeries USA, Inc.*,
No. 3:21-CV-00637-DWD, 2022 WL 4129436 (S.D. Ill. Sept. 12, 2022) ............................15

*F.T.C. v. CyberSpy Software, LLC*,
No. 6:08-CV-1872-ORL-31, 2009 WL 8708856 (M.D. Fla. May 26, 2009) ........................23

*Grand River Enters. Six Nations, Ltd. v. King*,
　　No. 02 Civ. 5068, 2009 WL 222160 (S.D.N.Y. Jan. 30, 2009)........................................15, 21

*Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*,
　　No. 3:11-CV-268-JD-CAN, 2015 WL 13664418 (N.D. Ind. July 7, 2015) ....................11, 12

*Hastings v. Ford Motor Co.*,
　　No. 19-CV-02217-BAS-MDD, 2022 WL 602352 (S.D. Cal. Mar. 1, 2022) .........................15

*Hawn v. Speedway LLC*,
　　No. 1:16-CV-359, 2018 WL 2192162 (N.D. Ind. May 14, 2018).........................................23

*Heselton v. Espinoza*,
　　No. 21-CV-1592-DWD, 2023 WL 167093 (S.D. Ill. Jan. 12, 2023)....................................13

*HTG Capital Partners, LLC v. Doe(s)*,
　　No. 15-C-2129, 2015 WL 5611333 (N.D. Ill. Sept. 22, 2015)..............................................12

*Little v. JB Pritzker for Governor*,
　　No. 18 C 6954, 2020 WL 1939358 (N.D. Ill. Apr. 22, 2020).........................11, 12, 16, 19, 22

*Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*,
　　129 F.R.D. 528 (E.D. Wis. Feb. 7, 1990) ...............................................................................19

*Martin v. United States*,
　　No. 13-CV-3130, 2015 WL 7783516 (C.D. Ill. Dec. 3, 2015)..............................................11

*Mish Int. Monetary, Inc. v. Vega Capital London, Ltd., et al.*,
　　No. 1:20-cv-4577 (N.D. Ill.) ................................................................................1, 4, 16, 20

*In re NASDAQ Market-Makers Antitrust Litig.*,
　　164 F.R.D. 346 (S.D.N.Y. Jan. 16, 1996) .......................................................................13, 14

*In re Paraquat Prod. Liab. Litig.*,
　　No. 3:21-MD-3004-NJR, 2023 WL 8372819 (S.D. Ill. Dec. 4, 2023) .............................11, 22

*Parker v. Four Seasons Hotels, Ltd.*,
　　291 F.R.D. 181 (N.D. Ill. May 6, 2013) ................................................................................12

*Quantlab Techs. Ltd. v. Godlevsky*,
　　No. 4:09–cv–4039, 2012 WL 12894142 (S.D. Tex. Feb. 27, 2012).......................................13

*Robinson v. Stanley*,
　　No. 06 C 5158, 2010 WL 1005736 (N.D. Ill. Mar. 17, 2010)...............................................12

*Sprint Sols., Inc. v. iCell Guru, Inc.*,
　　310 F.R.D. 563 (N.D. Ill. Oct. 20, 2015) ..............................................................................24

*Stanley Works v. Newell Co.*,
   No. 92 C 20157, 1992 WL 229652 (N.D. Ill. Aug. 27, 1992) ................................................18

*Suture Express, Inc. v. Cardinal Health 200, LLC*,
   No. 14–cv–04737, 2014 WL 6478077 (N.D. Ill. Nov. 18, 2014) ....................................18, 22

*Tate v. City of Chicago*,
   No. 18 C 7439, 2020 WL 4437853 (N.D. Ill. Aug. 3, 2020) ................................................23

*U.S. ex rel. Tyson v. Amerigroup Ill., Inc.*,
   No. 02-C-6074, 2005 WL 3111972 (N.D. Ill. Oct. 21, 2005) ................................................12

*U.S. Gypsum Co. v. LaFarge N. Am., Inc.*,
   No. 03 C 6027, 2004 WL 816770 (N.D. Ill. Mar. 2, 2004) ................................................21

*Vitol Inc. v. Vega Capital London Limited*,
   No. 1:24-cv-1492 (N.D. Ill.) ................................................................................10

*Yost v. Carroll*,
   No. 20 C 5393, 2022 WL 3594643 (N.D. Ill. Aug. 23, 2022) ................................................11

**Rules and Statutes**

Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* ................................................................1

Sherman Antitrust Act, 5 U.S.C. § 1 *et seq.* ................................................................1

Fed. R. Civ. P. 26 ................................................................................12, 13, 16

Fed. R. Civ. P. 30(b)(6) ................................................................1, 3, 7, 23, 24

Fed. R. Civ. P. 45 ................................................................1, 3, 11, 13, 19, 22, 24

Fed. R. Evid. 401 ................................................................................18

Non-party Shell Trading (US) Company ("STUSCO") moves to quash Defendants Vega Capital London Limited ("Vega") and Adrian Spires's ("Spires") Subpoena to Testify at a Deposition in a Civil Action (the "Deposition Subpoena") under Rule 45(d)(3).

Vega wants to depose STUSCO under Federal Rule of Civil Procedure 30(b)(6) to obtain STUSCO's proprietary, highly confidential trading information, as well as information about STUSCO's business operations. The non-party discovery sought by Vega and Spires is barred under Rule 45 because the information is neither relevant nor necessary to the claims and defenses in *Mish International Monetary, Inc. v. Vega Capital London Ltd., et al.*, No: 20-CV-4577 (N.D. Ill. filed Aug. 04, 2020) and thus does not justify the undue burden and significant harm disclosing the information would cause STUSCO.

## **INTRODUCTION**

Vega and around 100 traders in crude oil-related products who worked with or on behalf of Vega were sued in a putative class action for allegedly violating the Commodity Exchange Act (the "CEA"), 7 U.S.C. § 1 *et seq.*, and the Sherman Antitrust Act (the "Sherman Act"), 15 U.S.C. § 1 *et seq.* based on their trading of the May 2020 West Texas Intermediate futures contract on April 20 and 21, 2020.

STUSCO is a large energy and commodity trading company and engages in the buying and selling of crude oil and related products, including the New York Mercantile Exchange West Texas Intermediate crude oil futures contracts. STUSCO's trading information, including, its strategies, methods, analyses, and decision-making processes, is of the utmost commercial importance to STUSCO, is not publicly available, and is highly sought after by competitors. Because the information's value to STUSCO would be severely diminished if it were available to STUSCO's competitors, STUSCO has implemented rigorous processes and policies to ensure the information remains confidential.

The Plaintiff in the underlying litigation has made no allegations about STUSCO or its traders. Yet Vega, STUSCO's direct competitor, and Spires seek discovery of STUSCO's confidential trading information in the hope that the information *might* help their defense. Vega and Spires's **eighteen**-topic Deposition Subpoena asks STUSCO to provide testimony from a corporate representative regarding, among other things: "***the reasons why***" STUSCO and its traders decided to buy or sell (or not to buy or sell), "including the reasons why they bought or sold at the times they did"; "the extent to which [STUSCO] utilized alternative trading methods"; STUSCO and its traders' "reaction" to market events; STUSCO "and its traders' own internal analysis" regarding prices; and STUSCO's plans for physical storage and delivery of crude oil.[1] These topics and others noticed by Vega and Spires implicate STUSCO's proprietary, highly confidential information related to STUSCO's broad trading strategy and to STUSCO's business operations, capabilities, and resources.

Vega and Spires acknowledge that the information they seek is highly confidential. But they concede that they will not refrain from disclosing the highly confidential information. For example, they intend to share STUSCO's information with experts for the parties, who are consultants to the industry, including, potentially, STUSCO's trading partners and competitors. Vega and Spires may also use STUSCO's confidential information at summary judgment or during trial, at which point it will likely become public. The Protective Order in the underlying litigation provides little protection to STUSCO and will not adequately prevent the disclosure of STUSCO's confidential information.

Disclosure of STUSCO's highly confidential trading strategies and related information will cause substantial harm to STUSCO's business and jeopardize STUSCO's competitiveness.

---

[1] Ex. 1, Vega and Spires's Subpoena to Testify at a Deposition in a Civil Action, served on April 25, 2024 (the "Deposition Subpoena") (emphasis added).

Federal Rule of Civil Procedure 45 protects non-parties like STUSCO by ensuring they are not subjected to undue burden, expense, or harm. Vega and Spires must establish that the confidential information they seek is "sufficiently relevant and *necessary*" to their case to outweigh the harm disclosure would cause to STUSCO. They cannot meet this high burden.

Vega and Spires have already received comprehensive market information from the Chicago Mercantile Exchange ("CME") and the Commodity Futures Trading Commission ("CFTC"), among other sources, and document productions from at least twenty subpoena recipients, including STUSCO. They have had several opportunities to explain why the highly proprietary, confidential information they seek from STUSCO and other non-parties is necessary to their defense and there rationales are wanting.

Besides seeking disclosure of STUSCO's highly confidential trading information, Vega and Spires also seek information from STUSCO that can be obtained through more convenient and less burdensome means than a deposition, and seek to impose obligations on STUSCO that exceed the requirements of Federal Rule of Civil Procedure 30(b)(6).

For these reasons and as explained below, STUSCO's motion should be granted.

## BACKGROUND

### I. STUSCO Is Not a Party and STUSCO's Conduct Is Not at Issue in the Underlying Litigation

This motion relates to a putative class action brought by Plaintiff Mish International Monetary, Inc. ("Mish"), on behalf of itself and all others similarly situated, against Defendants Vega and John Does 1-100 (collectively, "Defendants") in the United States District Court for the Northern District of Illinois (the "Complaint"). Mish accuses Defendants of conspiring to manipulate and depress prices of the New York Mercantile Exchange West Texas Intermediate

crude oil futures contract expiring in May 2020 ("WTI Contract") between at least April 20, 2020 and April 21, 2020, in violation of the CEA and Sherman Act.[2]

Mish claims that on April 20, 2020, traders associated with Vega "combined and conspired" to aggressively sell large volumes of May 2020 WTI futures contracts to depress the price (including the settlement price) of the WTI Contract.[3] Mish alleges that, before April 20, 2020, traders associated with Vega bought a large volume of Trading at Settlement ("TAS") contracts, which gave Vega the right to buy May 2020 WTI futures contracts at the contract's settlement price at the close of trading on April 20, 2020.[4] Mish alleges that, as a result of Defendants' acts, the price of the May 2020 WTI futures contracts plummeted from the previous day's settlement price and traded at a negative price, causing Mish to trade in May 2020 WTI futures contracts at artificial prices.[5]

Mish has brought no claims against STUSCO nor has it alleged that any of STUSCO's or its traders' conduct relates to or concerns its claims against defendants.

## II. STUSCO's Trading Information Is Highly Confidential and Closely Guarded From STUSCO's Competitors, Like Vega

STUSCO is a large energy trading company.[6] Its portfolio includes the buying and selling of physical crude oil and related products, including WTI crude oil futures contracts.[7] STUSCO is thus a direct competitor of Vega.[8]

---

[2] Ex. 2, Second Amended Class Action Complaint, ¶ 1, *Mish Int. Monetary, Inc. v. Vega Capital London, Ltd., et al.*, No. 1:20-cv-4577 (N.D. Ill. Feb. 3, 2023), ECF No. 202 (the "Complaint").
[3] *Id.* at ¶¶ 137, 143.
[4] *Id.* at ¶¶ 201, 265.
[5] *Id*. at ¶¶ 135, 201.
[6] Ex. 3, Declaration of Nigel Catterall (dated May 23, 2024), at ¶ 6.
[7] *Id.* at ¶ 4.
[8] *See id.* at ¶ 5.

STUSCO has developed a strong position in the trading market, including a portfolio in crude oil.[9] Its successful trading activities make its proprietary trading strategies in demand by competitors.[10] STUSCO closely guards information related to its trading strategies, such as information related to:

- The amount, price, times, and nature of its purchases or sales;

- The number, names, and locations of its traders;

- The reasons why its traders bought or sold (or refrained from buying or selling);

- Its traders' use of certain trading methods;

- Its traders' decision-making process and related internal analysis;

- Its traders' sources of market information;

- Its traders' predictions and expectations regarding prices;

- Its traders' reaction to and analysis concerning notifications regarding pricing;

- The identities and locations of its suppliers, customers, and trading partners or affiliates;

- Its capabilities and resources related to and impacting its trading activities, including but not limited to its access to supply, and storage and transportation capabilities.[11]

This information is proprietary, commercially sensitive, highly confidential, and amounts to trade secrets, and it helps STUSCO's traders compete with other traders, like Vega.[12] STUSCO's communications regarding or related to this information are similarly highly confidential and commercially sensitive.[13] Disclosure of this information and related

---

[9] *Id.* at ¶ 6.
[10] *Id.* at ¶ 8, 11.
[11] *Id.* at ¶¶ 9, 10.
[12] *Id.* at ¶ 7.
[13] *Id.* at ¶ 8.

communications to Vega, other traders, or industry consultants would give STUSCO's competitors an unfair economic advantage and severely diminish the information's value to STUSCO.[14]

To protect the value of its information, STUSCO has implemented rigorous processes and policies to avoid the information's disclosure.[15] STUSCO strictly regulates and monitors internal and external access to information about its trades and trade strategy.[16] For example, only a limited number of STUSCO employees have access to STUSCO's trade strategy information.[17] STUSCO securely stores its electronic information[18] and it has strict written confidentiality policies, which provide that employees must agree to maintain the confidentiality of STUSCO's information and to abide by practices that ensure confidentiality of STUSCO's information.[19]  Third parties are rarely granted access to STUSCO's trading information.[20] Before STUSCO will authorize a third party to receive limited access to its trading information, the third party must first execute a confidentiality agreement.[21] Further, the STUSCO trade floor is very secure and requires badge access for entrance.[22] These practices, among others, ensure that STUSCO's confidential trade secrets are safeguarded and do not fall into the hands of competitors, like Vega.

## III.    The Deposition Subpoena Seeks Information About STUSCO's Confidential Information and Trade Secrets

Vega and Spires served the Deposition Subpoena on STUSCO on April 25, 2024. The Deposition Subpoena seeks testimony from a STUSCO corporate representative under Rule 30(b)(6) on **eighteen** topics.[23] Sixteen of the eighteen deposition topics seek confidential

---

[14] *Id.* at ¶¶ 8, 13, 14.
[15] *Id.* at ¶ 15.
[16] *Id.* at ¶ 16.
[17] *Id.* at ¶ 18.
[18] *Id.* at ¶ 17.
[19] *Id.* at ¶ 19.
[20] *Id.* at ¶ 20.
[21] *Id.*
[22] *Id.* at ¶ 21.
[23] Ex. 1 (Deposition Subpoena) at 1-3.

information concerning STUSCO's trading and strategies related to the WTI Contract.[24] The

Deposition Subpoena includes topics concerning:

(1) "the Company's size, its annual revenues, its number of employees, the number of countries in which it operates ,the overall number of crude oil barrels physically traded by the Company, and structure governing the Company's trading of futures contracts" for the WTI Contract;[25]

(2) "whether the Company had a long or short position on the" WTI Contract on April 20, 2020;[26]

(3) the "amount, price, times, and nature of any purchases or sales of the WTI [] Contract on April 20, 2020 and April 21, 2020 by the Company or any of its traders of, including whether any purchases or sales were accomplished through a Trading at Settlement ("TAS") mechanism, whether the Company was holding a long or short position with respect to each purchase or sale, and the profit or loss from any such purchase or sale";[27]

(4) the "number, names, and locations of Company traders who were trading the WTI [] Contract on April 20, 2020 and April 21, 2020";[28]

(5) the "***reasons why*** the Company or its traders bought or sold the WTI [] Contract on April 20, 2020 or April 21, 2020, including the ***reasons why*** they bought or sold at the times they did";[29]

(6) the "***reasons why*** the Company and its traders did not make any further purchases of the WTI [] Contract than it did when the prices were negative after 1:08 pm (CT) on April 20, 2020";[30]

(7) the "extent to which the Company utilized alternative trading methods on April 20, 2020 and April 21, 2020 with respect to the purchase and sale of the" WTI Contracts;[31]

(8) "expectations" communicated to the Company on April 20, 2020, regarding the WTI Contract;[32]

---

[24] Topics 17 and 18 are improper for the reasons discussed in preceding Sections II and III.
[25] Ex. 1 (Deposition Subpoena), at ¶ 1.
[26] *Id.* at ¶ 2.
[27] *Id.* at ¶ 3.
[28] *Id.* at ¶ 4.
[29] *Id.* at ¶ 5 (emphasis added).
[30] *Id.* at ¶ 6 (emphasis added
[31] *Id.* at ¶ 7.
[32] *Id.* at ¶ 9.

(9) the "**reaction** by the Company and its traders to notifications by the CME in April 2020";[33]

(10) the "Company's and its traders' **own internal analysis** on or before April 21, 2020 as to whether it or they believed the price of any WTI Contract (including the WTI [] Contract) could or would become negative";[34]

(11) the "amount of WTI crude oil that the Company agreed to physically store in connection with the WTI May Contract" and the "amount of available storage space… that was under the control of the Company and that was not used to store WTI crude oil";[35] and

(12) the "**reasons why** the Company did not agree on April 20, 2020 and April 21, 2020 to accept physical delivery of any other oil covered by the WTI [] Contract."[36]

The Deposition Subpoena also seeks information about "the nature, circumstances, and content" of communications regarding these topics.[37] Each of these topics implicates STUSCO's highly confidential trading information.

## IV.    STUSCO and Other Non-parties Have Repeatedly Objected to Vega and Spire's Subpoenas Because the Information Sought Is Highly Confidential

Before serving STUSCO with the Deposition Subpoena, Vega and Spires served STUSCO with a Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action (the "Document Subpoena") on November 16, 2023.[38] The Document Subpoena sought nine categories of documents concerning STUSCO's trading of and trading strategies for the WTI Contract, including: (i) documents about STUSCO's trades and investments in the WTI Contract from April 20 to April 21, 2020, including the amount and timing of any trades and the amount of any long or short positions (Requests 1 to 3); (ii) documents about whether STUSCO (or its traders) knew or believed that the WTI Contract could trade at negative

---

[33] *Id.* at ¶ 11 (emphasis added).
[34] *Id.* at ¶ 12 (emphasis added).
[35] *Id.* at ¶¶ 13, 15.
[36] *Id.* at ¶ 14 (emphasis added).
[37] *Id.* at ¶¶ 8, 10, 16.
[38] Ex. 4, Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action, served on November 16, 2023 (the "Document Subpoena").

prices and STUSCO's trading strategy in connection with same (Requests 4 to 6); (iii) documents about whether STUSCO accepted (or considered accepting) the physical delivery of any oil covered by the WTI Contract (Request 7); and (iv) communications between STUSCO and third parties about the WTI Contract (Requests 8 and 9).[39] On December 29, 2023, STUSCO served responses and objections to the Document Subpoena on the basis (*among others*) that the documents sought are not relevant and that the information sought constitutes highly confidential trading information and trade secrets.[40] In conferring with Vega and Spire's counsel, counsel for STUSCO reiterated STUSCO's concerns over the proprietary, commercially sensitive, and highly confidential nature of the information sought and the insufficiency of the Protective Order to protect the trade secrets from disclosure to STUSCO's competitors, industry consultants, and the public. Based on the understanding that STUSCO's information would not be shared with Vega personnel, and that STUSCO would have the ability to object to any attempted public disclosure of those materials, as well as the responsive documents, which were largely communications with third parties, STUSCO agreed to produce documents responsive to the subpoena.[41]

STUSCO was one of 28 market participants to receive a Document Subpoena from Vega and Spires. *See* No. 20-cv-04577, ECF No. 282 at 3. One of the other recipients, Vitol Inc. ("Vitol"), moved to quash the subpoena it received. *See Vitol Inc. v. Vega Capital London Ltd.*, Docket No. 1:24-cv-1492 (N.D. Ill.). "In support of its motion, Vitol submitted affidavits from two employees explaining (i) why the information sought by the subpoena was confidential, and (ii) that the information sought was obtainable from sources other than Vitol." *See* No. 1:24-cv-2628, ECF No. 19 at 5 (citing No. 1:24-cv-1492, ECF Nos. 1 at Exs. B and C, 17-1 and 17-2). "Vitol

---

[39] *Id.*
[40] Ex. 5, STUSCO's Response and Objections to Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action, dated December 29, 2023.
[41] Ex. 6, STUSCO Document Production Letter, dated March 8, 2024.

also submitted an expert affidavit from David B. Lerman explaining that much of the information that Vega and Spires are seeking from the subpoena recipients is available from public sources including, but not limited to, data regarding: (i) worldwide demand for crude oil; (ii) over supply of crude oil in April 2020; (iii) the liquidity of the market on April 20, 2020; (iv) the amount of available storage for crude oil; (v) historical WTI Contract prices; and (vi) pricing on other crude oil products." *Id.* (citing No. 1:24-cv-1492, ECF No. 17-3).

About one month after Vitol's motion was fully briefed, Vega and Spires moved to compel the production of documents from another subpoena recipient, Glencore Ltd., in the United States District Court for the Southern District of New York. *See* No. 1:24-cv-2628, ECF No. 19. The arguments raised in their motion are nearly identical to the arguments raised in response to Vitol's motion to quash. In response to Vitol's and Glencore's objections, Vega and Spires have not adequately articulated why the information they seek is relevant or necessary to the claims and defenses at issue in the underlying litigation, nor have they explained why they cannot obtain the information from other less burdensome and/or publicly available sources. Vega and Spires also have not addressed Vitol or Glencore's concerns that the Protective Order is insufficient to protect against harmful disclosure of competitively sensitive information. On April 3, 2024, the Court heard oral argument on Vitol's motion (No. 1:24-cv-1492, ECF No. 19) and Vega and Spires again failed to articulate why the information that they seek from Vitol is relevant and necessary to their defenses.

## **ARGUMENT AND AUTHORITIES**

A party's "ability to use subpoenas to obtain information from non-parties is not unlimited[.]" *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *1 (N.D. Ill. Apr. 22, 2020) (granting non-party's motion to quash a subpoena); *see also Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19 CV 7190, 2022 WL 17740419, at *1 (N.D. Ill. Dec. 16, 2022)

(denying motion to compel a non-party and holding a non-party "cannot be called to answer discovery in the same way a party would"). Rule 45 requires that the issuer of a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* (citing Fed. R. Civ. P. 45(d)(1)). Rule 45 also "instructs courts that they 'must protect' non-parties 'from significant expense resulting from compliance' with a subpoena." *Id.* (citing Fed. R. Civ. P. 45(d)(2)(B)(i)-(ii)); *In re Paraquat Prod. Liab. Litig.*, No. 3:21-MD-3004-NJR, 2023 WL 8372819, at *2 (S.D. Ill. Dec. 4, 2023) ("[C]ourts exercise closer scrutiny over [third party] discovery requests because third parties are not expected to bear the burdens of a litigation in which they have no personal stake.").

"Consequently, [] court[s] should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party.'" *Id.* at 2 (citing *Martin v. United States*, No. 13-CV-3130, 2015 WL 7783516, at *2 (C.D. Ill. Dec. 3, 2015)); *see also Yost v. Carroll*, No. 20 C 5393, 2022 WL 3594643, at *3 (N.D. Ill. Aug. 23, 2022) ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs for discovery.") (citing *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014)); *Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268-JD-CAN, 2015 WL 13664418, at *3-4 (N.D. Ind. July 7, 2015) (granting non-party's motion to quash a deposition subpoena because, *inter alia*, the burden was "even more significant given [the movant's] status as a non-party"). "[I]t has been consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Id.*; *U.S. ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02-C-6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. May 6, 2013); *Craigville*, No. 19 CV 7190, 2022 WL 17740419, at *1. "Non-parties are

afforded this consideration because they have a different set of expectations than parties . . . . While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden." *Little*, No. 18 C 6954, 2020 WL 1939358, at *2 (quoting *HTG Capital Partners, LLC v. Doe(s)*, No. 15-C-2129, 2015 WL 5611333, at *3 (N.D. Ill. Sept. 22, 2015)); *see also Craigville Tel. Co.*, No. 19 CV 7190, 2022 WL 17740419, at *1; *Robinson v. Stanley*, No. 06 C 5158, 2010 WL 1005736, at *3 (N.D. Ill. Mar. 17, 2010) ("It is one thing to subject parties to the trials and tribulations of discovery-rightly regarded as "the bane of modern litigation," but non-parties do not "have a horse in [the] race.") (internal citation omitted).

"In addition to non-party status of the subpoenaed entity, courts consider a number of other factors when determining if the burden imposed by a subpoena is 'undue,'" including "whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party." *Id.* (citing *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *2 (N.D. Ill. May 6, 2013)). A court may also limit discovery under Federal Rule of Civil Procedure 26(b)(2)(c) if it determines that the requested information can be obtained from a more convenient or less burdensome source. *Id.*; *Heselton v. Espinoza*, No. 21-CV-1592-DWD, 2023 WL 167093 (S.D. Ill. Jan. 12, 2023) ("A subpoena issued pursuant to Rule 45 is subject to the general relevancy standard for discovery described in Rule 26(b)(1).").

## I. Information About STUSCO's Business Operations and Trading Strategy is Entitled to Confidential Treatment and Is Not Relevant or Necessary

The topics in Vega and Spire's Deposition Subpoena concern STUSCO's business operations, capabilities, and resources, and implicate information related to STUSCO's trading

strategies, rationales, methods, analyses, and decision-making processes, as well as related communications. For example, several topics expressly call for information about the "***reasons why*** the Company or its traders" engaged in specific trading activities related to the WTI Contract on April 20 and 21, 2020.[42]

Courts routinely find that information related to trading strategies is confidential commercial information or trade secrets. *See, e.g.*, *Aspen Mktg. Servs., Inc. v. Russell*, No. 09 C 2864, 2009 WL 4674061, at *8 (N.D. Ill. Dec. 3, 2009) (business strategy and marketing plans were trade secrets); *Quantlab Techs. Ltd. v. Godlevsky*, No. 4:09–cv–4039, 2012 WL 12894142, at *1 (S.D. Tex. Feb. 27, 2012) (denying motion to compel production of "highly valuable proprietary trade secrets in the form of trading strategies and technology"); *In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 346, 355 (S.D.N.Y. Jan. 16, 1996) (calls disclosing "trading strategies" are "exactly the sort of confidential commercial information contemplated by Rule 26(c)"). Vega and Spires have conceded that such information is entitled to confidential treatment. *See* No. 1:24-cv-1492, ECF No. 20.

STUSCO cannot provide additional information related to its position on or trading of the WTI Contract on April 20 and 21, 2020 without revealing proprietary, highly confidential information about STUSCO's broader trading practices, strategies, capabilities, and resources.[43] As Glencore explained in its response in opposition to Vega and Spire's motion to compel, "trading of derivative contracts such as the WTI Contract does not occur in a vacuum, but is often connected to hedging or other strategies that are closely linked with trading of the physical commodity." *See* No. 1:24-cv-2628, ECF No. 19 at 5. The broader information concerning STUSCO's trading practices, strategies, and capabilities, and resources that would be revealed in response to the

---

[42] Ex. 1 (Deposition Subpoena), at ¶¶ 5, 6, 14 (emphasis added).
[43] Ex. 3 (Declaration), at ¶ 12.

Deposition Subpoena—including, the number, names, and locations of STUSCO's traders, STUSCO's sources of market information, the identities and locations of STUSCO's suppliers, customers, and trading partners or affiliates, STUSCO's access to supply, and STUSCO's storage and transportation capabilities—is critical to STUSCO's commodities trading business, highly sought after by competitors, and never made publicly available.[44]

For example, information about STUSCO's traders' data sources is critical to STUSCO's trading business and highly confidential.[45] Traders often invest many years in developing their data sources and contacts.[46] *Id.* If information about STUSCO's contacts and data sources is made available to its competitors, the information's value to STUSCO will be at risk and STUSCO's competitiveness will be threatened.[47]

Information about STUSCO and its traders' strategies, methods, analyses, and decision-making processes is even more sensitive and demanding of strict confidentiality. *See, e.g.*, *In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. at 355. STUSCO cannot provide information about the "***reasons why***" its traders entered into or refrained from entering into certain transactions—such as the "purchase[] or sale[] of the WTI [] Contract"—or "its traders' ***own internal analysis***" without disclosing its traders' broader strategies, rationales, methods, and processes, which are still relevant today.[48] STUSCO closely guards this information, which is highly sought after by competitors and industry consultants (such as the parties' consulting and testifying experts).[49] Disclosure of this information would give STUSCO's competitors an unfair economic advantage by allowing STUSCO's competitors to, among other things, replicate or

---

[44] *Id.* at ¶¶ 7, 10-11.
[45] *Id.* at ¶ 13.
[46] *Id.*
[47] *Id.*
[48] *Id.* at ¶¶ 12, 14.
[49] *Id.*

undermine STUSCO's trading strategies.[50] Disclosure of the information would therefore harm STUSCO's business and jeopardize STUSCO's market position and competitiveness.[51] *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068, 2009 WL 222160, at *2 (S.D.N.Y. Jan. 30, 2009) (finding protective order for non-party's "stale" business information was still warranted because "[a] competitor such as Plaintiff (or its consultants) could use [the information] as a guide to replicate [the non-party's] methods of analysis and predict [the nonparty's] next strategic moves"); *Elder v. Bimbo Bakeries USA, Inc.*, No. 3:21-CV-00637-DWD, 2022 WL 4129436, at *2 (S.D. Ill. Sept. 12, 2022) (granting protective order where disclosure of business information "'would have a seriously deleterious effect' on Defendant's competitive position in the marketplace and allow competitors to replicate its products"); *Adtrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2020 WL 6391210, at *1 (N.D. Cal. Mar. 24, 2020) (confidential treatment is warranted where "confidential business material, marketing strategies, product development plans could result in improper use by business competitors seeking to replicate [the company's] business practices") (citing *Algarin v. Maybelline, LLC*, No. 12CV3000 AJB DHB, 2014 WL 690410, at *2 (S.D. Cal. Feb. 21, 2014)); *Hastings v. Ford Motor Co.*, No. 19-CV-02217-BAS-MDD, 2022 WL 602352, at *2 (S.D. Cal. Mar. 1, 2022) (granting motion to seal business information that competitors could use to replicate "essential component[s]" of Ford's business relations).

Because, as Vega and Spires concede,[52] the information sought by the Deposition Subpoena is proprietary and highly confidential, Vega and Spires must show that the information is relevant **and** necessary to justify its disclosure. They cannot satisfy this standard.

---

[50] *Id.* at ¶¶ 8, 14.
[51] *Id.*
[52] *See, e.g.*, Docket No. 1:24-cv-1492, ECF No. 20.

### A. Vega and Spires Cannot Meet Their Burden of Showing That the Information They Seek From STUSCO Is Relevant

A party may only obtain discovery that is relevant to the claims and defenses at issue. Fed. R. Civ. P. 26(b)(1). A party seeking discovery has the burden of showing that the requested discovery is relevant to a claim or defense. *Blaise v. Transworld Sys. Inc.*, No. 21 CV 5791, 2022 WL 3026946, at *1 (N.D. Ill. Aug. 1, 2022). A subpoena should be quashed if the party seeking discovery cannot meet this burden. *See, e.g., Little*, 2020 WL 1939358, at *8 (denying motion to compel subpoena response because, *inter alia*, "plaintiffs have not sufficiently explained why the materials that they seek . . . are relevant to the parties' claims or defenses . . .").

Mish claims that defendants violated the CEA and Sherman Act by conspiring to manipulate and fix the prices of the WTI Contract.[53] Mish alleges that defendants entered an agreement to depress WTI Contract prices by "engag[ing] in a frenzy of selling which greatly increased their sales per minute and caused their percentage of the entire market's sales to exceed 30% in this worldwide market."[54] Mish does not allege that STUSCO participated in the conspiracy, nor does Mish allege that STUSCO's traders' conduct relates to or concerns the alleged conspiracy or price manipulation. Vega and Spires argue that the depressed prices did not result from their conduct, but were instead the result of the "sharp drop in demand and a vast over-supply of it" during the pandemic and the lack of storage space to facilitate the physical settlement of WTI Contract. *See* No. 1:24-cv-02628, ECF No. 1 at 1-2.

Information about STUSCO's business operations and trading strategies is irrelevant to whether (1) defendants entered into an unlawful agreement to fix prices in violation of the Sherman Act, (2) defendants manipulated prices in violation of the CEA, or (3) depressed WTI Contract

---

[53] Ex. 2 (Complaint), at ¶¶ 347, 356,366, 370, 376, 381, 385.
[54] *Id.* at 3.

prices resulted from the declining global demand for crude oil during the pandemic or lack of storage space. Information about STUSCO's business operations—for example, information about its company "size, its annual revenues, its number of employees, the number of countries it operates"[55]—is specific to STUSCO and irrelevant to the claims and defenses at issue. Similarly, information about STUSCO's trading strategies and capabilities is irrelevant to whether **defendants** entered into an agreement to fix or manipulate prices.

If Vega and Spires seek to establish that depressed prices stemmed from the decline in global demand for crude oil during the pandemic or lack of storage space, they can do so without the detailed business and commercial information they seek from STUSCO. As Vitol and Glencore have pointed out, market information concerning global demand for crude oil is "widely available from a variety of sources," including the comprehensive market information Vega and Spires have received from the CME and the CFTC, among others.[56] *See* No. 1:24-cv-2628, ECF No. 19 at 8. For example, "the CME has produced a complete set of all trading activity in the May WTI Contract during the time period relevant to this case." *Id.* (citing ECF No. 3-7 at 12-13).

On the other hand, information about STUSCO's business operations, capabilities, resources, and trading strategies is unique to STUSCO's business and will provide limited value, if any, in establishing **overall** market supply and demand or the **overall** volume of market activity on April 20 and 21, 2020. The details of STUSCO's traders' strategy, methods, analysis, and decision-making process on April 20 and 21, 2020 are irrelevant to market dynamics impacting the WTI Contract prices. For example, evidence about the identify and location of STUSCO's traders and the methods and analyses employed by those traders will not make the fact that depressed WTI Contract prices may have resulted from the declining global demand for crude oil

---

[55] Ex. 1 (Deposition Subpoena) at ¶ 1.
[56] *See, e.g.*, No. 1:24-cv-1492, ECF No. 17-3 ¶ 25(b); *see also* 4/3/2024 Hr'ing Tr. 12:5-13:3.

any more or less probable that it would be without the evidence. Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence."). It is therefore no surprise that Vega and Spires have not been able to meaningfully articulate why the detailed commercial information they seek from non-parties like STUSCO is relevant in response to the relevancy objections raised by Vitol and Glencore. *See, e.g.*, No. 1:24-cv-2628, ECF No. 19 at 8-9.

Because the information sought is not relevant, STUSCO's motion should be granted.

### B. Vega and Spires Cannot Meet Their Burden of Showing That the Information They Seek From STUSCO Is Necessary

A party seeking confidential information from a non-party must establish that the information is "sufficiently relevant and *necessary* to the [u]nderlying [l]itigation to outweigh the potential harm that disclosure would cause." *Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 14–cv–04737, 2014 WL 6478077, at *4 (N.D. Ill. Nov. 18, 2014) (emphasis added) (granting in part motion to quash a subpoena seeking confidential information); *Stanley Works v. Newell Co.*, No. 92 C 20157, 1992 WL 229652, at *4 (N.D. Ill. Aug. 27, 1992) ("[i]n addition to relevancy, [movant] must show that the information sought . . . is sufficiently necessary to the case to outweigh the harm that disclosure would cause . . . ."). It is not enough to show that the information from a non-party might be "helpful." *Concord Boat Corp. v. Brunswick Corp.*, No. 96 C 6026, 1996 WL 705260, at *3 (N.D. Ill. Dec. 4, 1996). The party seeking discovery must show that the information is "***truly necessary***" and that there is a "***substantial need***" for the information. *See id.* (denying motion to compel "because Concord has failed to show that it truly needs the information sought . . . .") (emphasis added); *Little*, 2020 WL 1939358, at *8 (denying motion to compel subpoena response because, among other things, plaintiffs did not explain why "they ha[d] a substantial need for the[] materials"); *Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D.

528, 531 (E.D. Wis. Feb. 7, 1990) ("the party requesting disclosure must make a ***strong showing of need***, especially when confidential information from a nonparty is sought.") (emphasis added). When assessing need under Rule 45, it is "significant" that the information "is readily available from a more convenient or less burdensome source." *Craigville Tel. Co.*, 2022 WL 17740419, at *4.

Because the information Vega and Spires seek from STUSCO is not relevant to any claims or defenses, Vega and Spires cannot establish that the information is "truly necessary." Indeed, in response to Glencore's objection that the confidential non-party information sought by Vega and Spires is not necessary, Vega and Spires claimed that the information is necessary because it "can best prove that there was no significant demand for the [] WTI Contract." No. 1:24-cv-2628, ECF No. 19 at 11. Vega and Spires do not claim that the confidential non-party information is the only way to prove diminishing demand for the WTI Contract (because it is not), but claim that the information would be helpful. But that the information is somehow more helpful or persuasive than information already available to Vega and Spires does not make the information "truly necessary" or satisfy the "strong showing of need" required. *See Litton Indus., Inc.*, 129 F.R.D at 531; *Concord Boat Corp.*, 1996 WL 705260, at *3.

For example, Vega and Spires have received aggregate trade data from the CME, as well as document productions from at least twenty subpoena recipients, including STUSCO.[57] STUSCO has produced a summary list of the trades made by STUSCO on the WTI Contract on April 20, including the volume and price of the trades. Vega and Spires have not established, and cannot establish, that they have a "substantial need" for the information covered in the Deposition

---

[57] Ex. 6 (STUSCO Document Production Letter).

Subpoena topics in light of the aggregate trade data produced by CME and the document productions made by STUSCO and other non-parties.

Because Vega and Spires cannot make a "strong showing of need" to satisfy their burden, STUSCO's motion should be granted.

### C. The Protective Order Is Not Enough to Protect Against Disclosure

The existence of the Protective Order is not sufficient to warrant disclosure of STUSCO's confidential information and trade secrets. *See Concord Boat Corp.*, 1996 WL 705260, at *3 (denying motion to compel confidential production of third party information notwithstanding that a "protective order has been entered"). The Protective Order does not offer sufficient protection for STUSCO's confidential information and trade secrets because it will not prevent disclosure of the information and, in some cases, expressly permits disclosure to persons or entities who may use it to STUSCO's disadvantage.

The Protective Order authorizes the parties' industry experts and consultants to review and analyze STUSCO's confidential information.[58] There is nothing preventing one of the parties' experts from later becoming a consultant for one of STUSCO's competitors. Courts have recognized the "real and appreciable risk" that experts may later be in a situation where they cannot "help but utilize[]" the information in the litigation "in a way that could have significant adverse consequences" for the producing entity. *See Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elecs., Inc.*, No. 14 C 3731, 2014 WL 2808984, at *5 (N.D. Ill. Jun. 20, 2014); *see also U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 2004 WL 816770, at *1 (N.D. Ill. Mar. 2, 2004) ("Although a person may, in good faith, attempt to segregate knowledge learned in confidentiality during litigation, it would be difficult for a [consultant] to segregate any knowledge gained in this case from future

---

[58] Ex. 7, Stipulated Protective Order, *Mish Int. Monetary, Inc. v. Vega Capital London, Ltd., et al.*, No. 1:20-cv-4577 (N.D. Ill. Nov. 5, 2020), ECF No. 24 (the "Protective Order"), at ¶ 4.2(e).

analyses provided in his role as a consultant."); *Grand River Entes. Six Nations, Ltd.*, 2009 WL 222160, at *3 ("Numerous courts have found that, even with a protective order in place, the disclosure of commercially sensitive information to reliable and well-intentioned experts can be harmful.").

The Protective Order also authorizes the disclosure of STUSCO's confidential information to witnesses.[59] Glencore correctly observes that the Protective Order "only requires the parties to 'meet and confer concerning the use of any Highly Confidential Information' at depositions.[60] "Nothing prevents the parties from sharing [STUSCO]'s trade secrets with business personnel or traders of the parties who are designated as witnesses, or *third party witnesses* such as employees of the 27 other subpoena recipients—all of which are competitors or counterparties of [STUSCO]." *See* No. 1:24-cv-2628, ECF No. 19 at 14 (emphasis in original). For example, counsel for Vega and Spires may seek to use STUSCO's deposition testimony about confidential trading information and trade secrets as an exhibit during third party depositions, including depositions of STUSCO's direct competitors.

The Protective Order also does not prohibit the public disclosure of STUSCO's proprietary and confidential information at hearings on dispositive motions or at trial.[61] There is therefore a real risk that STUSCO's confidential information and trade secrets will eventually become public. *See Suture Express, Inc.*, 2014 WL 6478077, at *6 (declining to compel production of confidential information where, among other things, the protective order did not address the use of confidential information "at any trial or hearing").

---

[59] *Id.* at ¶ 4.2(g).
[60] *Id.* at ¶ 4.3(f).
[61] *Id.* at ¶ 12.

Because the Protective Order will not sufficiently protect STUSCO's confidential information and trade secrets, STUSCO's motion should be granted.

## II. Information About the Nature, Source, Chain of Custody, and Authenticity of STUSCO's Documents Can Be Obtained Through Less Burdensome Means

Topic 17 of the Deposition Subpoena seeks information about the "nature, source, chain of custody, and authentication of documents produced by [STUSCO] in response to the [Document Subpoena] served by Vega and Spires[.]"[62] This topic should be quashed because STUSCO can provide the information through less burdensome means—for example, through a declaration by STUSCO.

Rule 45 requires that the issuer of a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Little*, No. 18 C 6954, 2020 WL 1939358, at *1 (granting non-party's motion to quash a subpoena) (citing Fed. R. Civ. P. 45(d)(1)). A court must quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv); *In re Paraquat Prod. Liab. Litig.*, No. 3:21-MD-3004-NJR, 2023 WL 8372819, at *2 (S.D. Ill. Dec. 4, 2023) ("Courts therefore, on timely motion, must quash or modify subpoenas that 'subject[ ] a person to undue burden.'"); *America's Health & Resources, Ctr., Ltd. v. Alcon Laboratories, Inc.*, No. 16 CV 4539, 2018 WL 11189390, at *1 (N.D. Ill. Mar. 12, 2018) ("[T]he court has an independent obligation to protect third-party subpoena respondents from undue burden and expense when responding to discovery subpoenas."). Courts have quashed subpoenas when the information sought is available through more convenient or less burdensome sources. *See, e.g.*, *Tate v. City of Chicago*, No. 18 C 7439, 2020 WL 4437853, at *4 (N.D. Ill. Aug. 3, 2020) (quashing in part a subpoena because "Plaintiffs themselves" were a "more convenient, less burdensome, and equally reliable source of the information"); *DeGeer v. Gillis*, 755 F. Supp.

---

[62] Ex. 1 (Deposition Subpoena), at ¶ 17.

2d 909, 926 (N.D. Ill. Dec. 8, 2010) (holding defendant needed to search readily available sources before requiring a non-party to search for documents responsive to the subpoena).

Because the information requested by Topic 17 can be provided through more convenient, less burdensome means, STUSCO's motion should be granted.

## III. The Deposition Subpoena Must Be Quashed Because It Imposes Burdens On STUSCO Beyond Those Set Forth in the Federal Rules of Civil Procedure

Vega and Spires seek a deposition of STUSCO's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6), but demand that STUSCO designate witnesses "who have personal knowledge of the matters contained within each designated topic" because they "intend to examine each witness in his or her personal capacity and in his or her capacity as a corporate representative."[63] Vega and Spires also seek the "foundation for any statement made during the course of [STUSCO's] deposition."[64] These demands exceed the obligations imposed on named organizations in Rule 30(b)(6).

Rule 30(b)(6) allows the named organization to designate anyone "whom it wishes to provide testimony." *See F.T.C. v. CyberSpy Software, LLC*, No. 6:08-CV-1872-ORL-31, 2009 WL 8708856, at *3 (M.D. Fla. May 26, 2009). Rule 30(b)(6) does not require that a witness' testimony be based off of personal knowledge. *See Hawn v. Speedway LLC*, No. 1:16-CV-359, 2018 WL 2192162, at *2 (N.D. Ind. May 14, 2018) ("30(b)(6) deposition testimony is an exception to the general rule that a witness's testimony must be based on personal knowledge."); *Colo. Bankers Life Ins. Co. v. Acad. Fin. Assets, LLC*, No. 5:20-CV-00185-D, 2021 WL 1997006, at *2 (E.D.N.C. Mar. 9, 2021) ("[T]here is no requirement under the rules that AFA designate the best or most knowledgeable person to testify on each topic. It can designate anyone willing to testify on its

---

[63] *Id.* at 1.
[64] *Id.* at ¶ 18.

behalf."). The rule instead requires that the named corporation "make a good faith effort to find out the relevant facts and prepare a representative to testify about the subjects." *Sprint Sols., Inc. v. iCell Guru, Inc.*, 310 F.R.D. 563, 568 (N.D. Ill. Oct. 20, 2015). Accordingly, Rule 30(b)(6) does not require a foundation for a 30(b)(6)'s witness' testimony. *Id.*

Because the Deposition Subpoena circumvents STUSCO's right to designate a witness of its choosing and imposes burdens on STUSCO beyond those set forth in Rule 30(b)(6), STUSCO's motion should be granted.

## CONCLUSION

STUSCO respectfully requests that the Court enter an order under Federal Rule of Civil Procedure 45(d)(3) quashing the Deposition Subpoena and granting STUSCO any protections and relief to which STUSCO may be entitled.

Dated: May 24, 2024

/s/ Eliot Turner
Eliot F. Turner
Texas State Bar No. 24066224
Southern District of Texas Bar No. 976577
NORTON ROSE FULBRIGHT US LLP
1550 Lamar, Suite 2000
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
eliot.turner@nortonrosefulbright.com

Of counsel:

Alex Cummings
NORTON ROSE FULBRIGHT US LLP
1550 Lamar, Suite 2000
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
alex.cummings@nortonrosefulbright.com

*Attorney in Charge for*
*Movant Shell Trading (US) Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the court's ECF filing and service system, certified mail, return receipt requested, and electronic means on May 24, 2024:

Lauren Goddard
Akerman LLP
Lauren.Goddard@akerman.com
71 South Wacker Drive
47th Floor
Chicago, IL 60606

*/s/ Eliot Turner*
Eliot F. Turner


## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for petitioner and respondents have conferred regarding the subpoena and petitioner's objections to the subpoena on several occasions by videoconference and we have been unable to resolve this dispute.

*/s/ Eliot Turner*
Eliot F. Turner